# EXHIBIT 5

| | |
|---|---|
| **From:** | Lahn, Jonathan R. |
| **To:** | Gerald Herrmann |
| **Cc:** | Jared Brown; Catherine Darlson |
| **Subject:** | Bergman v. Abbott - Proposed Edits to Custodians and Search Terms |
| **Date:** | Monday, April 13, 2015 3:20:18 PM |
| **Attachments:** | 4 13 15 Abbott Comments to Relator"s Proposed Search Terms.pdf |
| | Abbott Comments and Proposed Revisions to Relator"s Proposed Custodian List.pdf |

Mr. Herrmann -

Attached please find markups with comments to your proposed custodian list and search term list.

In general, I think that your latest revision to the custodian list represents a positive step towards a mutually agreeable list.  However, we believe some additional edits are appropriate and have included explanations of those edits in the attached.  In large part the edits are to address certain custodians who we believe represent a high degree of overlap regarding the same topics or documents because they had the same or similar roles, and also a number of proposed custodians who left the company before the inception of this litigation and the related subpoena.

With respect to search terms, our overarching comment, as we mentioned on the phone during our last call, is that the searches should be structured to include TriCor plus one of the specified terms - otherwise, in a company with numerous drugs,  we will end up with a large number of non-responsive documents relating to other products.  That change and other proposed edits and comments are included in the attached document.  If we can reach agreement in principle on an agreed set of terms we would propose to run a test run of our agreed search term list against a sample group of custodians in order to identify any new terms that may produce unexpected numbers of results.

Thanks,

Jon Lahn

Jonathan Lahn
Kirkland & Ellis LLP
300 N. LaSalle St.
Chicago, IL 60654
312-862-2151

~~ISSUES TO REMEMBER~~
~~1. All searches should be run on singular and plural~~
~~2. For names, provides any variant or nickname~~
~~3. For abbreviations and acronyms, include full spelling as well~~
~~4. For drugs, include the branded name, active ingredient, generic name and individual names. For examples, statin includes HMG CoA; Lipitor and Crestor, etc; atorvastatin and lovastatin, etc; and generic names.~~
~~5. For Abbott drugs, TriCor includes all three formulations, the temporarily assigned names and previous names~~
~~6. For words which have or may have a hyphen, search both ways~~
~~7. For words which may have a space or no space, search both ways~~
~~8. Searches should not be limited to "case sensitive" letters~~

TERMS

TriCor or Feno! or Fibr! and any of the following

1. "Off label"
2. "Non branded"
3. "Paint the picture"
4. Resid! /s risk
5. Statin /s fibr!
6. "Return on Investment" or ("ROI")
7. VA-HIT
8. FIELD
9. ACCORD
10. SAFARI
11. BIP
12. HPS
13. HHS
14. DAIS
15. Castelli
16. "NNT" or "(numbers needed to treat")
17. Gemfib!
18. Solvay
19. ABcomm
20. MEI
21. ACCESS
22. Lipidforum!
23. Michael Davidson

> **Comment [LJR1]:** Would substitute "Helsinki" here to avoid confusion with the Department of Health and Human Services

24. Thomas Dayspring
25. Peter Jones
26. Scott Grundy
27. Anthony Keech
28. AHFS! or "(American Hospital Formulary Service")
29. "Medically accepted indication"
30. "Type A Meeting"
31. "Type B Meeting"
32. "Type C Meeting"
33. "Division of Metabolism" – DMEP
34. "Division of Cardiovascular" – DCRP
35. "Division of Drug Marketing" – DDMAC
36. "Center for Drug Evaluation and Research" – CDER
37. "NDA" or ("New Drug Application")
38. "sNDA" or ("Supplemental New Drug Application")
39. "IND " or "(Investigational New Drug Application")
40. "Failed stud!"
41. "lipid triad"
42. "Beyond LDL"
43. Statistical! /s significan!
44. Clinical! /s significan!

FOR THE FOLLOWING: (tricor or feno! Or fibr!) AND
   1. FDA
   2. Outcomes
   3. Efficacy
   4. Ineffic!
   5. "Add on"
   6. Comb!
   7. Dyslipidemia
   8.7.      Coadminist!
   9.8.      SWOT
   10.9.     "Marketing /s plan"
   11.10.    "Marketing materials"
   12.11.    "Educational materials"
   13.12.    "Publication plan"
   14.13.    Diabet! or T2DM or "Type 2"
   15.14.    "Coronary artery disease" (CAD)
   16.15.    Cardiovascular disease (CVD)
   17.16.    Coronary heart disease (CHD)

**Comment [LJR2]:** Should this be "INDA" - concerned that "Ind" on its own will lead to numerous hits for other words with the same abbreviation

**Comment [LJR3]:** "FDA" is very broad since the FDA could be mentioned in virtually any communication about TriCor, and particular terms about various types of FDA interactions are already included.

**Comment [LJR4]:** This also seems overbroad; given that mixed dyslipidemia is one of the indications of the drug it will likely come up in a huge proportion of docs that mention TriCor.

18.17.    CV /s risk
19.18.    CV /s outcome
20.19.    Morbidity
21.20.    Mortality
22.21.    Medicare
23.22.    Medicaid
24.23.    Tricare
25.24.    Gov! /s pay!
26.25.    Honorari!
27.26.    Preceptor!
28.27.    "War chest"
29.28.    "Lunch and learn"
30.29.    Rhabdo!
31.30.    Creatinine
32.31.    Renal
33.32.    liver
34.33.    MOA or " (mechanism of action")
35.34.    CSS or " (cardiovascular specialty sales force")
36.35.    "Adverse event" ………includes SAE and AERS
37.36.    HEOR …………includes "health economics"
38.37.    CME or " (continuing medical education")
39.38.    IMS
40.39.    "Speaker's bureau"
41.40.    "Advisory board"
42.41.    Compendi!
43.42.    Misbrand!
44.43.    "Primary Endpoint"
45. Benefit /s risk
46.44.    "Speak! /s engagement"
47.45.    Franchise
48.46.    Decile (or D#)
49.47.    "for representative education only"
50.48.    "for representative detail purposes only"
51.49.    "not to be dis!"
52.50.    "market share"
53.51.    Budget!
54.52.    Indicat!
55.53.    "patient profile"
56.54.    NCEP

**Comment [LJR5]:** Since we do not agree that Adverse Events are relevant we do not think this search term is needed

**Comment [LJR6]:** Given that this phrase is on TriCor's label we believe it will likely lead to overinclusive results

**Comment [LJR7]:** This appears overbroad; among other things, every label will contain a reference to "indications"

57.55.____ Promo! /s spen!

58.56.____ KOL or ("key opinion leader")

59.57.____ "Controlled study"

60.58.____ Spiff

61.59.____ "meeting minutes"

62.60.____ Reimburs!

63.61.____ "reasonable and necessary"

64.62.____ "Interoffice correspondence"

65.63.____ "board of directors"

66.64.____ Robins

**Comment [LJR8]:** This seems very broad given that "well controlled study" is a term of art used in FDA regulations that apply to every drug

**Comment [LJR9]:** This seems overbroad without any limitation regarding the type of meeting involved.

**Abbott Comments/Edits to Relator's 4/3/15 Custodian List**

GOVT CUSTODIAN LIST

1. Arnold, Timothy
2. Badwan, Runda
3. Bennett, Kevin
4. Bradley, Gregory
5. Carson, Donald
6. Chari, Amrita
7. ~~Corporate Records~~ **[Comment: not a custodian, per se]**
8. Doherty, Jennifer
9. Elvekrog, Kirsten and Elvekrog, Kirsten A.
10. Gardner, Joseph
11. ~~Gullo, Mary and Gullo, Mary M.~~ **[Comment:  Ms. Gullo appears to have been a regional sales manager.  Given the large number of regions and fluctuation of personnel in these positions, we do not believe it is practicable to extend the custodian list to regional or district sales managers.  Moreover, we believe that in a case like this where your allegations center on national strategies devised and implemented by TriCor marketing leadership, RMs and DMs will add little value in terms of additional relevant information]**
12. Haas, Marissa C.
13. ~~Hardin, Melanie~~ **[Comment: Regional Manager, same rationale as #11 above]**
14. Hicks-Cavanaugh, Kathleen
15. Hooyman, Laurel
16. Jones, Michael
17. Kirsch, Jonathan R.
18. ~~Krause, Laurel~~  **[Comment: Same person as Laurel Hooyman/Laurel Krause-Hooyman]**
19. ~~Link, Jeffrey A.~~  **[Comment: Regional Manager, same rationale as #11 and 13]**
20. ~~Marshak, Richard B.~~  **[Comment:  Based on our review he may have been in some larger Pharmaceutical Products Division Meetings where TriCor was discussed, but documents list him as Marketing Director for Synthroid, a thyroid drug]**
21. McFarland, Kathryn N.
22. ~~OEC~~  **[Not a custodian, per se]**
23. ~~Paielli, Christopher~~ **[Comment: He was an Area Training Manager, not needed given that we have training covered through other custodians]**
24. Pauls, Andrew
25. Peiser, Lisa
26. ~~Pena, Richard~~ **[Comment: Regional Manager, same rationale as 11, 13, 19]**
27. Pilotte, John
28. Powell, Jason

KE 35721954.1

**Comment [LJR1]:** We still have not seen the alleged agreed custodian list you reference.

29. ~~Rancourt, Michael C.~~ [**Comment: Regional Manager, plus documents indicate he was involved with Synthroid/Meridia**]

30. ~~RICS Group~~ [**Comment Not a custodian per se**]

31. ~~Shah, Ajay S.~~ [**Comment: Our information indicates a role in Global Drug Supply Management, not a TriCor or marketing specific role**]

32. ~~Shappee, Daniel~~ [**Comment: He was a district manager, a level below regional manager. There were dozens if not hundreds of district managers.**]

33. Silver, Jonathan

34. ~~Tankin, John~~ [**Comment: He is only a "custodian" of one document in the government production and that was only because he was the person in finance who pulled a report from an accounts payable database. As a person in the finance function he has no substantive connection to TriCor.**]

35. ~~Wilkinson, Donna~~ [**Comment: We feel that she and Jonathan Silver are duplicative since they were both market data analytics specialists**]

THOSE ON YOUR LIST THAT WERENT LISTED ON GOVERNMENT LIST

1. Duffey, John – GM TriCor/ABT-335
2. Golumbeck, Kristin – medical/regulatory review manager
3. Jenkins, Paul – sales training
4. McNichols, Sean – sales training
5. O'Neil, William – sales training
6. Solbrig, Deborah – sales training
7. Tolli, Natalie – global regulatory

> **Comment [LJR2]:** We believe we should consolidate and not have 4 training people with the same role as custodians. We would agree to 1.

OTHERS WE WANT

1. ~~Bob Altman – GM/DVP dyslipidemia franchise~~ [**Comment: Retired in 2005, prior to the filing of this case and related subpoena**]

2. ~~Mary Szela – VP of PPD~~ [**Comment: TriCor was one drug among many in the dyslipidemia franchise, and dyslipidemia was one group of drugs among many within the overall Pharmaceutical Products Division, of which Ms. Szela was the head. Her involvement in the marketing or development of TriCor was indirect and comprised only a small part of her overall job responsibilities**]

3. ~~Ernesto Rivera – Regulatory Affairs~~ [**Comment: Regulatory Affairs is a broad job description without any particular tie to TriCor; plus, Natalie Tolli, one of our proposed custodians already listed above, is the regulatory affairs custodian most directly implicated in TriCor.**]

4. Jim Stolzenbach – DVP Dyslipidemia and Heart Failure

5. ~~Stacey Chronis – PM clinical~~ [**Comment: No apparent tie to TriCor specifically, duplicative with E. Sun below, who was at a higher level within the clinical development group**]

2

6.  Eugene Sun – DVP Clinical Development

7.  ~~Nicole Nowed-Nassar – DVP of Pharma Operations~~ **[Comment: Left Abbott prior to this litigation and related subpoena]**

8.  ~~Denis Razon – Director of Commercial Development of TriCor~~ **[same]**

9.  ~~Michael Maurer – TriCor Marketing Director~~ **[same]**


NOT LISTED BEFORE

1.  ~~Timothy Ackerman – Sales Forecasting Director for TriCor~~ **[Comment: Retired in 2007]**

2.  ~~Douglas Sporn – Divisional VP for Regulatory Intelligence in the FDA Liaison Office~~ **[Comment: Retired in 2008]**

3.  ~~Marilou Reed – Director of Regulatory Affairs~~ **[Comment: Retired in 2008]**


PEOPLE CUT FROM THE LIST  **[Comment: Agree]**

1.  Amy Underwood
2.  Joe Medel
3.  Audrey Hsieh
4.  Any Wojtak
5.  Judy Turner
6.  Susan Boynton
7.  Keith Martino
8.  Mary Ellen Rescek
9.  Jim Tyree
10. Oliver Bohuon
11. John Leonard
12. Sue Leboza
13. Blasine Penkowski
14. David Wheadon
15. Viola Meehan
16. Linda Baer
17. Kristi Day
18. Dawn Wright
19. Linda Valentine
20. Linda Dennerlein
21. Peyton Yocum
22. Jeff Facer
23. Ron Siegel
24. Catherine York
25. Jeff Stewart
26. Kevin Dolan
27. Francois Aubin MD

3

28. Dominique Crimet, MD.
29. Patrick tabutiaux
30. Francois/Frank Vivet, MD
31. Julie Baker
32. Shelby Goldman
33. Van W. Perelli-Minetti
34. Scott Chronis
35. Scott Grundy
36. Sander Robins
37. Margarita Feiler
38. Paul Jenkins
39. Sean McNichols
40. Stephanie Thames-Harris
41. Donald Carson

KE 35721954.1

# EXHIBIT 6

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

Jonathan R. Lahn
To Call Writer Directly:
(312) 862-2151
jonathan.lahn@kirkland.com

300 North LaSalle
Chicago, Illinois  60654

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

May 21, 2015

**VIA E-MAIL**

Robert Nicholson, Esq.
Nicholson & Eastin, LLP
707 N.E. Third Avenue
Suite 301
Fort Lauderdale, Florida 33304

Re:   ***Bergman v. Abbott Laboratories***

Dear Mr. Nicholson:

Following up on our May 15, 2015 meet and confer, I write in connection with our discussions of particular categories of documents as to which Relator believes discovery outside of Abbott's proposed compromise date range of January 1, 2002 through December 31, 2008 is appropriate.  For the reasons articulated in my March 23 and April 13, 2015 letters to Gerald Herrmann, Abbott continues to believe that the proposed discovery period of January 1, 2002 through December 31, 2008 is more than adequate to provide the discovery that Relator is entitled to in connection with her claims.  Although Relator agreed to identify targeted categories as to which expanded discovery is appropriate, Jared Brown's May 3, 2015 letter identifies 137 RFPs as to which Relator seeks expanded discovery—meaning that nearly half of all Relator's RFPs are encompassed in the request.  A number of the RFPs Mr. Brown identifies are ones as to which Abbott has asserted relevance objections and has not agreed to provide any documents at all, regardless of the time period—for example, Abbott objects to producing irrelevant materials relating to adverse event reports, physician complaints, and materials regarding drugs for which no claims are asserted, like TriLipix and Certriad.

Nonetheless, Abbott is committed to making progress on discovery in this case and therefore will agree to provide expanded discovery with respect to several dozen of the RFPs identified in your request that relate to the core issues of TriCor's marketing messages, promotional materials, non-promotional provider education materials, regulatory approvals and formal correspondence with the FDA, and marketing plans, as set forth specifically below. Abbott's agreement to provide materials responsive to the requests listed below outside of the January 1, 2002-December 31, 2008 time frame is, of course, subject to the limitation that Abbott is not representing that such materials exist for the entire time period at issue.  Abbott

Beijing    Hong Kong    Houston    London    Los Angeles    Munich    New York    Palo Alto    San Francisco    Shanghai    Washington, D.C.

KE 36257474.1

# KIRKLAND & ELLIS LLP

Robert Nicholson, Esq.
May 21, 2015
Page 2

will produce materials that are identified after a reasonable search, and does not waive any applicable substantive objections set forth in its RFP responses, including any objection as to relevance or privilege.

**RFPs Identified in Mr. Brown's May 3 Letter As To Which Abbott Agrees to Provide Pre-2002 Discovery**

Subject to the above, Abbott agrees to provide discovery relating to the period January 1, 1997 through December 31, 2001 with respect to the following RFPs identified in Mr. Brown's letter as set forth below:

- RFPs 24, 25, 26 and 27: Abbott agrees to produce final versions of sales aids, non-promotional provider education materials, sales training materials, and documents reflecting the medical/regulatory approval of such materials.

- RFPs 37, 38, 39 and 40: Abbott agrees to produce final versions of training materials produced by its national sales training group (already covered by RFP 26, above), and final versions of training and/or provider education materials containing the phrase "paint the picture," or discussing the VA-HIT or DAIS study (already covered by RFP 24 above).

- RFPs 54, 55, 56: Abbott agrees to produce final versions of annual TriCor marketing plans, documents demonstrating final medical/regulatory compliance review of annual marketing plans, and sales projections or goals to the extent they are reflected within the TriCor marketing plans.

- RFP 149: Abbott agrees to produce materials provided or submitted to the FDA relating to the marketing of TriCor.

- RFPs 154, 155, 156, 157 and 158: Abbott agrees to produce materials provided or submitted to the FDA, including applications for approval and/or new indications of TriCor and materials submitted therewith, including studies.

- RFPs 163, 164, 167, 168, 169, 170, 171, 172 and 173: Abbott agrees to produce the requested materials provided to or received from the FDA relating to TriCor (which are duplicative of RFPs 149, 154, 155, 156, 157 and 158).

- RFP 178: Abbott agrees to produce all final approved versions of the TriCor Package Insert that were in effect during the expanded time period.

## KIRKLAND & ELLIS LLP

Robert Nicholson, Esq.
May 21, 2015
Page 3

- **RFPs 192-193:** As previously noted in connection with RFPs 149, 154, 155, 156, 157, 158, 163, 164, 167, 169, 170, 171, 172 and 173, Abbott agrees to produce communications and documents exchanged between Abbott and the FDA relating to the approval of TriCor.

- **RFPs 214:** As discussed above in connection with RFPs 149, 154, 155, 156, 157, 158, 163, 164, 167, 169, 170, 171, 172, 173, 192 and 193, Abbott agrees to produce formal correspondence and submissions between itself and the FDA relating to TriCor, including materials specified in RFP 214, which seeks inquiries from the FDA relating to the use of TriCor in combination with statin drugs.

**RFPs Identified in Mr. Brown's May 3 Letter As To Which Abbott Agrees to Provide Post-2008 Discovery**

Subject to the reservations set forth above, Abbott agrees to provide discovery relating to the categories below for the expanded time period of January 1, 2009 to present as set forth below:

- **RFPs 150 and 151:** Abbott has already produced all materials responsive to RFPs 150 and 151 (*i.e.*, the 36,000 documents produced in response to the November 2009 government subpoena regarding TriCor, which were provided to Relator in September 2014) without any date restriction. Therefore, Abbott agrees and has already fulfilled these requests.

- **RFPs 152 and 153:** Abbott agrees to produce the requested correspondence and documents, if any, with respect to TriCor.

- **RFPs 163, 164, 165, 166, 167, 168, 169. and 170:** Abbott agrees to produce correspondence between itself and the FDA, and materials provided to or received from the FDA, relating to TriCor, including the use of TriCor in combination with statins, the use of TriCor in diabetic patients, and any proposed label changes.

- **RFP 214:** As set forth in response to RFPs 163, 164, 165, 166, 167, 168 169, and 170 above, Abbott agrees to produce correspondence received from the FDA regarding the use of TriCor (fenofibrate) in combination with statins.

We hope that this further offer of compromise by Abbott will enable the parties to move forward and put an end to the ongoing debates about materials and remote date ranges that are

## KIRKLAND & ELLIS LLP

Robert Nicholson, Esq.
May 21, 2015
Page 4


truly tangential to the claims at issue and which have heretofore prevented progress on the core topics as to which we believe the parties are largely in agreement.

Sincerely,

Jonathan R. Lahn

EXHIBIT 7

**From:** Robert Nicholson [mailto:robert@nicholsoneastin.com]
**Sent:** Thursday, June 04, 2015 3:36 PM
**To:** Lahn, Jonathan R.
**Cc:** Gerald Herrmann; Catherine Darlson (ccd@kulaw.com); John Uustal (jju@kulaw.com)
**Subject:** RE: Bergman v. Abbott Laboratories - IMS Data

Jon,

        The IMS data was not included in the production.  We will have to check with IMS as to whether we can share that data with you.  As you are aware, IMS purchase agreements restrict a purchaser's ability to share the data; a fact that Abbott has raised several times with us to explain why Abbott has not yet produce the IMS data it possesses to us for the last 8 or 9 months.  Also as you know, we purchased the IMS data when Abbott was not forthcoming with producing its IMS data to us.  Perhaps you can tell us who at IMS your firm has been dealing with in trying to get permission to share Abbott's IMS data with us and we can go to the same person and hopefully get a more efficient process going.

        We do find it puzzling that you would be asking us for the IMS data when your client already has the IMS data.  Based upon documents we have reviewed, your client actually has more detailed data than we have.

        With respect to responding to the demand letter, as I discussed with Henry, the IMS data we purchased and the government payment totals Henry shared with us from Abbott internal documents fairly closely matched.  Also, the combination therapy percentages we used in formulating our demand were similar to the percentages we saw discussed in Abbott's internal documents.  Thus, I don't really see why you would need our IMS data to respond to the demand letter.

Robert N. Nicholson, Esq.
Nicholson & Eastin, LLP
707 NE Third Ave.
Suite 301
Fort Lauderdale, FL 33304
P: 954-634-4400
F: 954-634-4418

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. ANY ATTACHMENTS TO THIS TRANSMISSION ARE FOR THE SOLE PURPOSE OF CONVEYING THE DIRECT WRITTEN AND COMMONLY VISIBLE COMMUNICATION CONTAINED THEREIN. NO TRANSMISSION OF UNDERLYING CODE OR METADATA IS INTENDED. USE OF ANY ATTACHMENT FOR ANY PURPOSE OTHER THAN RECEIPT OF THE DIRECT WRITTEN COMMUNICATION CONTAINED THEREIN IS STRICTLY PROHIBITED. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPY OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY AND RETURN THE ORIGINAL MESSAGE TO THE SENDER. THANK YOU.

**From:** Lahn, Jonathan R. [mailto:jlahn@kirkland.com]
**Sent:** Thursday, May 28, 2015 12:26 PM
**To:** Robert Nicholson
**Cc:** Gerald Herrmann; Catherine Darlson (ccd@kulaw.com)
**Subject:** Bergman v. Abbott Laboratories - IMS Data

Robert,

We have been looking at the materials from your revised production, about which I will send a separate correspondence shortly.  However, we noticed right away that it does not appear to contain any IMS data, which you indicated previously that you had obtained from IMS and which appears to be reflected in your April settlement demand letter.  Can you please confirm whether that was included in your production and, if not, produce it as soon as possible?  Among other things, we need that information in order to properly evaluate your settlement demand.

Thank you,

Jon

Jonathan Lahn
Kirkland & Ellis LLP
300 N. LaSalle St.
Chicago, IL 60654
312-862-2151


************************************************************
The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.
************************************************************

# EXHIBIT 8

**From:** Robert Nicholson <robert@nicholsoneastin.com>
**Date:** June 23, 2015 at 4:52:17 PM CDT
**To:** "Lahn, Jonathan R. (jlahn@kirkland.com)" <jlahn@kirkland.com>
**Subject: IMS**

Jon,

The IMS contract person we dealt with is awaiting a response from IMS legal regarding the disclosure of the data to you.  In the meantime, please update me on Abbott's progress with the IMS disclosure.  Your email referenced new IMS data sets, but Abbott has preexisting IMS data sets that should be able to be disclosed immediately.

Robert N. Nicholson, Esq.
Nicholson & Eastin, LLP
707 NE Third Ave.
Suite 301
Fort Lauderdale, FL 33304
P: 954-634-4400
F: 954-634-4418

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. ANY ATTACHMENTS TO THIS TRANSMISSION ARE FOR THE SOLE PURPOSE OF CONVEYING THE DIRECT WRITTEN AND COMMONLY VISIBLE COMMUNICATION CONTAINED THEREIN. NO TRANSMISSION OF UNDERLYING CODE OR METADATA IS INTENDED. USE OF ANY ATTACHMENT FOR ANY PURPOSE OTHER THAN RECEIPT OF THE DIRECT WRITTEN COMMUNICATION CONTAINED THEREIN IS STRICTLY PROHIBITED. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPY OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY AND RETURN THE ORIGINAL MESSAGE TO THE SENDER. THANK YOU.